**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 15, 2020
Date Decided: December 29, 2020

Re: Villette v. MondoBrain, Inc., Civil Action No. 2020-0295-SG

Dear Litigants:

This is an action under Section 225 of the DGCL.[1] The Plaintiff, Philippe Villette, seeks confirmation that he is a member of the board of directors (the "Board") of Defendant MondoBrain, Inc. ("MondoBrain).[2] This Letter Opinion contains my post-trial resolution of that request: based on the record, I find that Villette is currently a member of the MondoBrain Board.

The facts are simple, and not in dispute.[3] As of June 11, 2019, Villette was a consultant for MondoBrain, and a member of the MondoBrain Board.[4] The controller of MondoBrain, Augustine Huret, was also a director.[5] In August of that year, a stockholder and former board member, Noreen Harrington, brought a

---

[1] *See generally, e.g.*, Verified Complaint Pursuant to 8 Del. C. § 225, Dkt. No. 1 [hereinafter the "Complaint" or "Compl."].
[2] *See id.*
[3] I recite the facts as I find them based upon the evidence submitted by the parties. Unless otherwise noted, all citations herein are to the Defendant's trial exhibits ("Ex. _"), submitted to the Court on July 10, 2020.
[4] Ex. 6 ¶ 3.
[5] *See* Ex. 4 ¶ 2.

derivative action on behalf of MondoBrain against Huret.[6] Villette was appointed to the Derivative Action Committee of the Board, created to review the litigation.[7] MondoBrain has been operating pursuant to a status quo order in that case since August 2019.[8] The order prohibits Huret, and any affiliate, agent, or person acting in concert or participation with him, from taking certain actions with respect to MondoBrain.[9] Around this same time, Villette's health deteriorated, and he began missing board meetings.[10] He suffered multiple heart attacks over the next months.[11] After December, the Company no longer employed Villette as a consultant.[12] Villette missed Board meetings on March 5, March 9 and March 11, 2020, and did not respond to communications from the Board.[13] Villette's absences (along with the absence of Huret) prevented the Board from achieving a quorum at those meetings.[14]

On March 8, 2020, another MondoBrain consultant, Pascale Gombert, recounted to MondoBrain director Guy Liegaux a conversation Gombert had had

---

[6] *See, e.g.*, Verified Complaint for Breach of Fiduciary Duties, *Harrington v. Huret*, C.A. No. 2019-0626-SG, Dkt. No. 1.

[7] *See, e.g.*, Ex. 3 at 35–37, 44–45.

[8] *See generally* Status Quo Order, *Harrington v. Huret*, C.A. No. 2019-0626-SG, Dkt. No. 28.

[9] *See id.*

[10] *See, e.g.*, Ex. 2 at 14, 18; Ex. 6 ¶¶ 10–11; Ex. 7 ¶¶ 3–14.

[11] *See* Ex. 2 12–13.

[12] *See* Ex. 3 at 16-18, 47-50.

[13] Ex. 2 at 92–99.

[14] Def. MondoBrain Inc.'s Post-Hearing Br. 6, Dkt. No. 35 [hereinafter "Def.'s Br."].

with Villette.[15]  According to Gombert, Villette had told him he was unable to "continu[e] with Mondobrain" due to ill health, and asked Gombert if he had leads for other "potential clients."[16]  Liegaux, in turn, reported the conversation to Board Chairman Jean-Paul Inchauspe.[17]  Inchauspe then "determined," based on Villette's "failure to attend Board meetings, failure to respond to communications, and third party representations" that Villette "had resigned."[18]  Accordingly, on March 12, 2020, Inchauspe informed Villette via email that he had accepted Villet's "resignation" from the board.[19]  Villette responded that he had been in very bad health and had undergone multiple hospitalizations in the fall and winter.[20] A few days later, by letter dated March 19, Villette informed the Board that he disputed Inchauspe's assertion that he had resigned.[21]

I first address the Defendant's argument that I should strike any affirmative representations in the Verified Complaint and other pleadings, or strike the entire Complaint, due to Villette's inability to remember details about his creation and filing of the Verified Complaint.  It is the Defendant's theory that Villette is aligned, at least in part, with Huret in Huret's dispute with MondoBrain, and that Huret

---

[15] Ex. 8 ¶ 7.
[16] Ex. 17.
[17] Ex. 7 ¶ 9.
[18] Def.'s Br. 7.
[19] Ex. 7 ¶ 12.
[20] *See* Ex. 20.
[21] Ex. 7 ¶ 16; Ex. 34.

convinced him to bring this action, aided by Huret's counsel. At his depositions[22] Villette proved unable to recall certain facts relating to his filing this action, to the point of being unable to remember filing the Complaint itself. For its part, MondoBrain states that it "believes that [Villette's] testimony is truthful and that, because of his health, he is unable to testify regarding the facts and circumstances underlying his Complaint."[23] As a result, the Defendant asks that I employ equity, or Rule 11(b)(3), to strike the Complaint and enter judgment against Villette. But that is not the only sanction or remedy available here.[24] I agree with MondoBrain that Villette is honestly testifying, and that his poor health over the course of this litigation, and particularly during the fall and spring of the last year, has caused him to be unable to recall the information that the Defendants sought through depositions. While the Plaintiff's memory is impaired, he is not mendacious, in my opinion. Therefore, I grant the Defendant the inference that Villette has received assistance and encouragement in this litigation from Huret. What I cannot grant, on this record and in light of my finding that Villette is truthful in this matter, is the ultimate inference MondoBrain requests; that the representation in the Complaint (and in testimony) that Villette did not subjectively intend to resign from the Board

---

[22] Villette testified briefly at trial. He stated that due to his precarious health, he would rest on his deposition testimony in this action.

[23] Def.'s Br. 21–22.

[24] *See generally Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2018 WL 6331622, at *10–12 (Del. Ch. Dec. 4, 2018).

4

is itself false. Such an ultimate sanction here would be, I find, unjust. On that issue, then, I turn to the evidence below, for much of which I may rely on MondoBrain's own narrative.

Villette was a consultant to MondoBrain, for which work he was compensated, in addition to serving as a director.[25] Villette was an active participant on the Board through October of 2019.[26] Sometime thereafter, his medical condition made him unable to attend meetings or participate. In December of that year "MondoBrain stopped utilizing Plaintiff's services as an independent contractor and stopped paying him."[27] Villette missed at least three board meetings in early 2020, and did not respond to Board communication. During this period, Villette had multiple heart attacks and was repeatedly hospitalized. In March, 2020, Inchauspe learned from Liegaux that Liegaux had learned from Gombert that Villette had told Gombert that his illness would "prevent [Plaintiff] from continuing with MondoBrain," and that he asked Gombert to introduce him to new "potential clients."[28]

Inchauspe, on behalf of the Board, accepted this "resignation," effective immediately. If in fact Villette had resigned, at that point he was no longer a member

---

[25] *See, e.g.*, Ex. 2 at 44–51
[26] *See, e.g.*, Ex. 3 at 35–37, 44–45.
[27] MondoBrain's Post-Hearing Brief, at 4.
[28] *Id.* at 7.

of the MondoBrain Board. It took Villette more than a week to deny to the Board that he had intended to resign. Thus the question before me is a factual one. Was Villette's statement to another MondoBrain consultant a "resignation?"

Under Section 141 of the DGCL, Directors serve until the election of a successor unless they are removed or resign.[29] Article 2.4 of MondoBrain's bylaws states that "any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation at its principal place of business or to the Chief Executive Officer or Secretary."[30] This provision mirrors 8 *Del. C.* § 141(b), which provides that a "director may resign at any time upon notice given in writing or by electronic transmission to the corporation."[31] An effective resignation may also be made verbally, where the verbal manifestation of intent is sufficiently clear to demonstrate that the director means to convey to the company that she no longer will serve as a director.[32]

Here, Villette did not submit a written resignation. Instead, the Defendant relies on three occurrences as manifestation of his intent to resign. The first two, failure to respond to communications and failure to attend at least three board meetings, are more likely than not, I find, explained by Villette's health; he had a

---

[29] 8 *Del. C.* § 141(b).
[30] Ex. 32.
[31] 8 *Del. C.* §§ 141(b), 142(b).
[32] *See, e.g., Gen. Video Corp. v. Kertesz,* 2008 WL 5247120, at *17 (Del. Ch. Dec. 17, 2008). I assume, without deciding, that MondoBrain's bylaws similarly permit effective oral resignation.

series of heart attacks and was hospitalized at least twice in this period. This leaves what the Defendant characterizes as his oral resignation.

As MondoBrain points out, there is Delaware case law supporting the proposition that a resignation need be neither in writing, nor use the words "I resign," to be an effective resignation as a director.[33] What an act of resignation must be, however, is an action that clearly manifests that the director has resigned his fiduciary position. Where the act is less than clear, it is not effective as a resignation.

Here, there is no writing. Villette did not make an oral statement announcing his resignation from the Board. He did not make an unequivocal statement of resignation to any director.[34] Villette was an independent contractor for MondoBrain. What he did do was make a statement *to another MondoBrain consultant* that his health would no longer allow him to serve MondoBrain, and in which he asked to consultant to recommend to him potential future clients. This statement, I find more likely than not, was a reference to Villette's need to step back from his consulting work, due to health. He was hardly likely to solicit from a fellow

---

[33] *E.g.*, *id.*; *see also Oracle P'rs, L.P. v. Biolase, Inc.*, 2014 WL 2120348, at *16 (Del. Ch. May 21, 2014), *aff'd*, 97 A.3d 1029 (Del. 2014).

[34] There is an indication in the record that Villette made statements that he was "through with" MondoBrain, but the company does not rely on these as a resignation, and they would suffer from the same lack of manifestation of intent to resign described, *infra. See, e.g.*, *Oracle P'rs, L.P. v. Biolase, Inc.*, 2014 WL 2120348, at *16 ("In general, a director may resign verbally through a sufficiently clear manifestation of his or her intent to resign. Although the magic words 'I resign' may not be necessary, there must nonetheless be some objective manifestation of words or actions to that effect.")

contractor leads regarding *other corporate board service.* In any event, this statement, I find, was not sufficient to manifest an intent to communicate to MondoBrain that he was resigning from the Board.

The other MondoBrain directors, however, were eager to see Villette off the Board, particularly in light of problems with assembling a quorum during Villette's illness. Accordingly Inchauspe seized on Villette's conversation with Gombert to "accept Villette's resignation." I find, however, by a preponderance of the evidence that Villette did not resign from the MondoBrain Board.

The Defendant makes much of the fact that it took several days for Villette to respond and deny that he had resigned. MondoBrain posits that Huret, as puppetmaster to Villette, caused him to so object, and ultimately convinced him to bring this action as well. Perhaps so. Given Villette's medical condition, however, I am unpersuaded that the timing indicates an agreement with the proposition he had resigned, and Huret's encouragement of this litigation does not prevent Villette's from demonstrating that he is still on the Board.

There are very real doubts as to whether Villette is fit to serve as a director. Unfortunately, his health is exceedingly fragile, and he has received medical advice to avoid stress. He maintains that his illness has significantly impaired his memory, as well. That issue is not before me, however. As to whether Villette should resign, or be removed, I take no legal or equitable view. Based on the record before me,

8

however, I determine that Villette was a member of the Board as of March, 2020; that he did not resign; and that accordingly he remains a member of the MondoBrain Board.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III